IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRIAN G. M., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 22-CV-246-MTS |
| ) | |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Brian G. M. requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined he was not disabled. For the reasons discussed below, the Court **affirms** the Commissioner's decision denying benefits.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920. Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.

At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id*. at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). A court's review is limited to two inquiries: first, whether the correct legal standards were applied; and second, whether the decision was supported by substantial evidence. *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is

"more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). A court, however, may not re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Even if a court might have reached a different conclusion, the Commissioner's decision will stand if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

**Background and Procedural History**

On October 17, 2019, Plaintiff filed applications for Title II disability insurance benefits (42 U.S.C. § 401, *et seq.*) and for Title XVI supplemental security income (42 U.S.C. § 1381, *et seq.*) under the Social Security Act. (R. 15, 243-46, 247-57). He alleged an inability to work beginning on February 8, 2019, due to limitations resulting from Sjogren's syndrome/disease, Stevens-Johnson syndrome, toxic epidermal necrosis, gout, high blood pressure, chronic pain, inflammation in joints, depression, anxiety with panic attacks, and insomnia. (R. 288). Plaintiff was forty-seven years old at the time of the ALJ's decision. (R. 31, 294). He has a high school education and past relevant work as a welder fitter, welder helper, and the composite job of forklift operator and production assembler. (R. 31, 57-58, 90-94, 289).

Plaintiff's applications were denied both initially and upon reconsideration. (R. 141-44, 148-53, 154-59). At Plaintiff's request, ALJ Luke Liter conducted an administrative hearing on

March 4, 2021.  The hearing was held by teleconference pursuant to COVID-19 procedures.  (R. 15, 67-96, 160).  At the hearing, Plaintiff agreed to amend his onset date to December 20, 2019. (R. 15, 71-72). The ALJ determined that consultative physical and psychological examinations of Plaintiff were necessary prior to deciding his claims.  (R. 94-95).  ALJ Liter held a supplemental telephone hearing on October 19, 2021 (R. 47-66), and he then issued a decision on November 18, 2021, denying benefits and finding Plaintiff not disabled.  (R. 15-33).  Plaintiff sought review by the Appeals Council, which it denied on April 22, 2022.  (R. 1-5).  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

Following the five-step sequential process, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since December 20, 2019, the amended alleged onset date. (R. 18).  At step two, he found Plaintiff suffered from severe impairments of left elbow impairment, Sjogren's syndrome, seizure disorder, depression, and post-traumatic stress disorder ("PTSD").  *Id*.  The ALJ determined at step three that Plaintiff's impairments did not meet or equal a listed impairment. (R. 18-20).  Based upon his consideration of Plaintiff's subjective allegations, the medical evidence, and the medical source opinion evidence, the ALJ concluded that Plaintiff retained "the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)" with the following additional limitations:

> The claimant is able to lift or carry, push or pull twenty pounds occasionally and ten pounds frequently.  The claimant can sit for six hours out of an eight-hour day, and stand or walk a combined total of six hours out of an eight-hour day.  The claimant cannot tolerate exposure to hazards such as unprotected heights or dangerous moving machinery.  The claimant should avoid all exposure to extreme heat.  The claimant can understand, remember, and carry out simple, detailed, and complex tasks.  The claimant can only tolerate occasional contact with the public.

4

> The claimant can interact appropriately with coworkers and supervisors. The claimant can adapt to occasional changes in a work setting.

(R. 20-21).

At step four, the ALJ determined Plaintiff had past relevant work as a welder fitter, welder helper, and a composite job of forklift operator and production assembler. (R. 31). After consultation with a vocational expert ("VE"), the ALJ concluded at step five that Plaintiff could perform the representative jobs of photocopy machine operator, silver wrapper, and marker, all of which he found existed in significant numbers in the national economy. (R. 32, 58-61). As a result, the ALJ found Plaintiff had not been under a disability from December 20, 2019, the amended alleged onset date, through the date of the decision. (R. 32-33).

### Errors Alleged for Review

Plaintiff raises three allegations of error in his challenge to the Commissioner's denial of benefits on appeal: (1) the ALJ failed at step four of the evaluation process, (2) the ALJ failed to properly evaluate the medical source opinions, and (3) the ALJ failed at step five of the evaluation process. *See* Docket No. 15 at 4.[1] The Commissioner counters that the ALJ properly evaluated the evidence, and the decision is supported by substantial evidence. *See* Docket No. 19 at 10-15.

### The ALJ's Consideration of Plaintiff's Elbow Impairment

Plaintiff argues the ALJ found his left elbow impairment severe at step two, but then ignored the impairment at steps four and five by not including a limitation for reaching in the RFC. Defendant responds that the ALJ did not ignore Plaintiff's left elbow impairment when assessing the RFC, because he limited Plaintiff to performing light work. For the reasons set forth herein, the Court finds the ALJ adequately addressed Plaintiff's left elbow impairment in the RFC.

---

[1] The Court has chosen to address Plaintiff's arguments in a different order and consistent with the sequential evaluation process.

The ALJ found Plaintiff's left elbow impairment was severe at step two. (R. 18). He then determined the impairment did not meet a listing at step three. (R. 18-19). When determining Plaintiff's RFC, the ALJ discussed Plaintiff's testimony from both hearings. Relevant to his elbow impairment, Plaintiff testified he suffered from joint deterioration and other conditions, but he could lift fifteen to twenty pounds. (R. 21, 80-81). The ALJ also noted Plaintiff's testimony that the consultative examiner, S.A. Chaudry, M.D., did not ask Plaintiff to demonstrate activity with his arms, hands, or fingers on examination, but he did ask Plaintiff to walk across the room and back. (R. 22, 26, 54).

The ALJ discussed the medical evidence pertaining to Plaintiff's left elbow impairment in detail. He referenced musculoskeletal examination findings from April and September of 2019, wherein Plaintiff exhibited a normal range of motion. (R. 26-27, 408, 412). In December of 2019, Plaintiff exhibited a normal range of motion, normal strength, no deformity, and no tenderness and swelling. (R. 22, 467, 553, 561). Through September of 2020, Plaintiff's examinations continued to show no obvious musculoskeletal deformity, he exhibited "normal range of motion throughout," and no joint swelling, erythema, or warmth. (R. 23-24, 601, 769, 779).

In February of 2021, an X-ray of Plaintiff's left elbow revealed "[m]oderate to advanced degenerative changes" and "[p]rominence of the olecranon bursa with suspected calcified loose bodies[.]" (R. 24, 27-28, 778, 885). On March 29, 2021, Plaintiff reported he was feeling okay, but his left elbow was giving him trouble. He indicated he could not extend his left arm fully at the elbow, and although his joint pain was stable, he had stiffness in the morning. He reported that the Lyrica was helping. On examination, it was noted that Plaintiff's "[l]eft olecranon bursa [was] swollen but without erythema or warmth" and the "[l]eft elbow lack[ed] 45 degrees from full

extension." Plaintiff was diagnosed with inflammatory arthritis, and he was to continue taking Lyrica and hydroxychloroquine. (R. 25, 28, 891).

The ALJ discussed Plaintiff's April 5, 2021, consultative examination with Dr. Chaudry. Dr. Chaudry noted Plaintiff's complaints of "generalized aches and pains in the joints from time to time." Plaintiff had no loss of power in any of his extremities, and his extremities demonstrated no edema or clubbing and "[n]o acute joint swelling, tenderness, or effusion." Plaintiff demonstrated a full range of motion and full strength in both upper extremities. (R. 25, 27, 865-71). On August 12, 2021, Plaintiff complained of musculoskeletal pain, including left elbow pain. The examination of Plaintiff's extremities was noted to be normal with no edema. (R. 26, 28, 1042, 1047).

The ALJ further considered the opinion evidence, including the opinions of the state agency physicians and a medical source statement completed by Seth Switzer, M.D. The ALJ found the opinions of the state agency physicians, limiting Plaintiff to light work with additional environmental limitations, were persuasive because they were consistent with the medical evidence, including that evidence received after their completion. (R. 30). The ALJ found Dr. Switzer's opinions, including a limitation to occasional reaching, were not persuasive, because his examination findings did not support the opinions, and the only examination "with findings close to [the] level" of limitation, was through telemedicine and not in-person. He also found that the degree of limitation found by Dr. Switzer was not supported by the other examination findings in the record. (R. 30).[2] After his detailed discussion of the evidence, including the opinion evidence, the ALJ concluded that the evidence was consistent with the determined range of light work. (R. 28, 31).

---

[2] Plaintiff does not challenge the ALJ's finding that the state agency physicians' opinions were persuasive, nor does he challenge his finding that Dr. Switzer's opinions were not persuasive.

In the reply brief, Plaintiff asserts the ALJ should not have relied upon Dr. Chaudry's examination of Plaintiff because it was incomplete. He points to the range of motion of Plaintiff's right thumb on Dr. Chaudry's report, which was left blank, and he also asserts that it is "inexact and unacceptable" for Dr. Chaudry to "dr[aw] a line down the page, presumably to indicate normal [range of motion]," instead of providing exact numbers. A review of Dr. Chaudry's report, however, shows that he provided the range of motion for every other joint, except for one pertaining to Plaintiff's right thumb, and although he did draw a line down the range of motion for Plaintiff's hand/wrist, it is clear from his notation that he found Plaintiff's range of motion was normal in all areas. (R. 869-70). In any event, Plaintiff's arguments are without merit because neither addresses Plaintiff's left elbow impairment.

Plaintiff also asserts a completely new argument in his reply brief that the ALJ failed to properly consider the effect of the "excruciating pain" he experienced on the bottom of his feet, which would interfere with his use of foot controls. He argues the "Defendant opens the door to a new argument regarding the hypothetical question and RFC and the limitation to light work: The ALJ did not consider the specific need for standing or sitting in either the hypothetical or RFC, a large part of the definition of light work[.]" Docket No. 21 at 1-2.

This Court generally will not address an argument raised by a plaintiff for the first time in a reply brief. *See M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n. 7 (10th Cir. 2009) (noting that "the general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief."); *see also Simmons v. Colvin*, 635 Fed. Appx. 512, 514 n. 2 (10th Cir. 2015) (applying rule in social security case), citing *Mays v. Colvin*, 739 F.3d 569, 576 n. 3 (10th Cir. 2014). Here, Plaintiff raised no argument in his opening brief pertaining to limitations with his feet, nor did Plaintiff argue that the ALJ failed to properly consider his ability to stand or

sit in the RFC or hypothetical questions.  There is nothing in Defendant's response brief which this Court construes as opening the door to Plaintiff's new argument.  In fact, Defendant's response brief specifically states that "Plaintiff does not allege the entire RFC is deficient" and that "Plaintiff only challenges . . . whether the ALJ 'failed to include any limitation' in the RFC for Plaintiff's left elbow impairment[.]"  Docket No. 19 at 10, quoting Docket No. 15 at 4-5.  This Court therefore declines to address these additional arguments.

Plaintiff does not point to any evidence regarding her left elbow impairment that the ALJ failed to consider, but she only asserts that because there was no limitation on reaching in the RFC, the ALJ ignored the impairment.  As demonstrated herein, the ALJ addressed the evidence regarding Plaintiff's left elbow impairment.  Based upon that evidence, he limited Plaintiff to light work, lifting up to twenty pounds occasionally and ten pounds frequently, and determined that a limitation on reaching was unwarranted.  This Court can find no error in the ALJ's evaluation of Plaintiff's left elbow impairment, and to do so, would amount to the Court's re-weighing of the evidence, which it cannot do.  *See Casias*, 933 F.2d at 800.

### The ALJ's Consideration of the Opinion Evidence

Plaintiff next argues the ALJ failed to properly consider the opinion of consultative examiner, Robert Danaher, Psy.D.  He asserts the ALJ failed to properly evaluate the supportability factor of the medical opinion analysis.  For claims filed after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c, 416.920c.  Under these rules, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the ALJ must "articulate" in the decision how persuasive he finds each medical source's opinion by considering a list of factors.  20 C.F.R. §§

404.1520c(b), 416.920c(b). The factors include: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important factors are supportability and consistency, and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).[3]

The regulations explain that for supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 1520c(c)(1), 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 1520c(c)(2), 416.920c(c)(2).

The ALJ discussed Dr. Danaher's examination of Plaintiff in detail in two separate portions of the decision. (R. 28-29, 30-31). Dr. Danaher conducted a psychological evaluation of Plaintiff on May 20, 2021, and issued a report dated May 30, 2021. Plaintiff reported symptoms associated with anxiety and depression. He participated in mental health counseling, but Plaintiff had not

---

[3] Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ must explain how he considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

been hospitalized for mental health treatment. On testing, Plaintiff did not exhibit a cognitive impairment and achieved a full-scale IQ of 111. Dr. Danaher assessed Plaintiff with PTSD and major depressive disorder (moderate severity). (R. 28-29, 30-31, 875-82). Dr. Danaher also completed a medical source statement of Plaintiff's ability to do work-related activities. He determined Plaintiff had no limitation in his ability to understand, remember, and carry out instructions, but Plaintiff had mild limitations with interacting with supervisors and co-workers and moderate limitations in interacting with the public and responding appropriately to usual work situations and to changes in a routine work setting. Dr. Danaher identified the factors supporting his assessment by stating that symptoms of PTSD "[were] described at a level of severity likely to impact some work interactions." (R. 28-29, 31, 872-74). After addressing Dr. Danaher's opinions, the ALJ found them persuasive, determining the opinions were "consistent with [Dr. Danaher's] examination findings" and with "the examination findings throughout the treatment record." (R. 31). The Court finds no error with the ALJ's evaluation of Dr. Danaher's opinions. The ALJ's analysis complied with the regulations.

Plaintiff also contends the ALJ failed to properly account for Dr. Danaher's opinion that Plaintiff was moderately limited in his ability to respond appropriately to usual work situations and to changes in a routine work setting in the RFC assessment. He argues the ALJ's limitation that Plaintiff can adapt to occasional changes in a work setting is inconsistent with Dr. Danaher's opinion and with the inclusion in the RFC that Plaintiff can understand, remember, and carry out simple, detailed, and complex tasks.

The Court finds no merit to Plaintiff's arguments regarding the mental RFC. The ALJ found Dr. Danaher's opinion persuasive, and he limited Plaintiff to only occasional changes in a work setting, while also limiting Plaintiff to occasional contact with the public. When assessing

11

the "paragraph B" areas of functioning, the ALJ noted Plaintiff's reports of difficulty managing stress and that "he liked things to be routine." (R. 19-20). He also determined that Plaintiff had a moderate limitation for adapting and managing himself. *Id.* Instead of relying on the opinions of the state agency psychologists, who concluded Plaintiff's mental impairment was not severe, the ALJ found their opinions were not persuasive and relied upon Dr. Danaher's opinions and Plaintiff's treatment records. (R. 30-31). It is clear to this Court that the ALJ considered Dr. Danaher's report, found it persuasive, and included appropriate limitations in the RFC to account for Dr. Danaher's moderate restriction in Plaintiff's ability to respond to usual work situations and changes in a routine work setting. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question. The ALJ, not a physician, is charged with determining a claimant's RFC from the medical record.") (quotation omitted).

Moreover, the Court finds there is no inconsistency with the ALJ's inclusion of a limitation to occasional changes in the work setting and his determination that Plaintiff can understand, remember, and carry out simple, detailed, and complex tasks. As Defendant points out, these are separate areas of mental functioning, and the ALJ's determination that Plaintiff can perform such tasks is supported by the evidence. Dr. Danaher determined Plaintiff's mental impairment did not affect his ability to understand, remember, and carry out instructions (R. 29, 31, 872), and Plaintiff's own reports supported the ALJ's determination. (R. 19-20, 302).

### The ALJ's Step-Five Determination

Plaintiff further argues the ALJ erred at step five because the hypothetical question presented to the VE was incomplete. He asserts that had the ALJ included an appropriate limitation on reaching, he would be unable to perform the step-five jobs relied upon by the ALJ.

As determined herein, the ALJ appropriately evaluated Plaintiff's left elbow impairment, determining Plaintiff was limited to light work with additional environmental restrictions. He also included appropriate mental limitations in the RFC. (R. 20-21). Because the ALJ presented a hypothetical question to the VE which included those limitations he adopted in the RFC (R. 58-61), there is no error by the ALJ at step five. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for the denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment."), citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993).

## Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

IT IS SO ORDERED this 21st day of June, 2023.

_____
MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRCT COURT